S. L. MEYER, EXECUTOR FOR THE ESTATE OF H. T. MEYER, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25788. Promulgated July 17, 1931.

*A. B. Freyer, Esq.*, and *J. B. MacBride, C. P. A.*, for the petitioner.

*John D. Kiley, Esq.*, for the respondent.

OPINION.

BLACK: In this proceeding S. L. Meyer, executor of the estate of H. T. Meyer, deceased, seeks a redetermination of the decedent's income-tax liability for the calendar year 1923, for which year the respondent has proposed a deficiency in the amount of $1,693.41.

During the year 1923 the decedent sold a one-half interest in the Louisiana Paper Company, which he had owned from the time of its organization in 1903, for $50,000. The decedent made his income-tax return for the calendar year 1923 on the cash receipts and disbursements basis and in reporting the profit on the same used a March 1, 1913, value for the stock of $45,000, and reported a profit of $5,000. The respondent determined the March 1, 1913, value of the stock of the Louisiana Paper Company to be the equivalent of its book value, which was:

| | |
|---|---|
| Capital stock | $45,000.00 |
| Surplus and undivided profits | 8,872.42 |
| Total | 53,872.42 |

and determined decedent's one-half interest to be $26,936.21, resulting in a profit of $23,063.79 on the transaction.

The pleadings raised the following issues:

1. Whether the respondent erred in determining that the March 1, 1913, value of the decedent's stock in the Louisiana Paper Company sold in 1923 to be equal and not greater than its book value as of that date.

2. Whether the respondent erred in treating the sale of stock as a completed transaction within the year 1923; that the notes taken as part payment were equivalent to cash and that the entire transaction was subject to tax in the year 1923, even though the decedent kept his books and filed his return on the cash receipts and disbursement basis.

3. Whether the respondent erred in refusing to treat as a gift within the taxable year 1923 three of the notes for $2,500 that were received as a part of the sale price of the stock sold.

In 1903 the Louisiana Paper Company was organized at Shreveport, La., with a capital stock of $25,000, which was owned equally by J. M. Meyer and his brother, H. T. Meyer, the taxpayer. J. M. Meyer died in 1913, leaving a widow, two sons, S. L. Meyer and C. E. Meyer, and a daughter. J. M. Meyer's stock passed into the succession administered by the widow, who continued to hold it at the time of the hearing. H. T. Meyer, the decedent, was unmarried and made his home with his brother and after his brother's death with his brother's family, in whose welfare he was greatly interested. From 1913 to 1923, while he owned only half the stock in the corporation, he directed its policy and was dominant in its management. In 1923 the decedent was in bad health and wished to retire from business. His two nephews, S. L. Meyer and C. E. Meyer, had been in the employ of the corporation since the time that they left school. The decedent was not certain whether they had the business experience to run the business successfully. On March 1, 1923, he sold half of his stock to A. C. Braunig, who formerly had been in the banking business, for $25,000, $10,000 of which was paid in cash and the remainder represented by a note for $15,000 secured by a pledge of part of the corporation stock and a mortgage on Braunig's home. Braunig, a short period before this transaction, had inherited one-half of his father's estate of $40,000 and was solvent at the time he gave the $15,000 note, which was in fact paid to the decedent on March 1, 1924. The remaining half of decedent's stock was sold to his nephews at the same time for $25,000, who paid him $12,550 in cash and transferred to him sixteen shares of stock in the First Savings Bank and Trust Company, which petitioner accepted at a valuation of $2,000; three shares of stock of the First National Bank of Albuquerque, N. M., which he accepted at a value of $450, and four joint notes signed by his nephews for $2,500 each, due in one, two, three and four years, respectively. One of the four above mentioned notes was paid by S. L. and C. E. Meyer on or before March 1, 1924,

the date of its maturity. The decedent required no security on the notes aggregating $10,000 given to him by his nephews, who both before and after the sale held remunerative positions with the corporation.

The outstanding capital stock of the Louisiana Paper Company was increased from $25,000 to $45,000 by stock dividends, but the decedent made no capital contribution after his initial investment. The earnings and stock outstanding of the Louisiana Paper Company for the years 1908 to 1917 were as follows:

| Year | Capital stock outstanding | Profit per books | Depreciation not on books | Net income after deducting depreciation | Net income per returns |
|---|---|---|---|---|---|
| 1908 | $25,000.00 | $2,659.54 | $785.30 | $1,874.24 | |
| 1909 | 25,000.00 | 2,016.07 | 785.30 | 1,230.77 | $2,016.07 |
| 1910 | 25,000.00 | 5,608.33 | 785.30 | 4,827.07 | 4,823.07 |
| 1911 | 45,000.00 | 5,565.53 | 902.28 | 4,663.25 | 4,663.25 |
| 1912 | 45,000.00 | 1,934.71 | 902.28 | 1,032.43 | 1,068.43 |
| 1913 | 45,000.00 | | | (¹) | ² 1,040.75 |
| 1914 | 45,000.00 | | | (¹) | ² 5,428.68 |
| 1915 | 45,000.00 | | | | ² 2,296.43 |
| 1916 | 45,000.00 | | | | 5,066.13 |
| 1917 | 45,000.00 | | | (¹) | 2,751.92 |

¹ Loss.
² Does not provide for depreciation.

The surplus and undivided profits of the Louisiana Paper Company on December 31, 1912, was, per books, $9,372.42, which amount does not take into consideration the sustained depreciation from the date of incorporation in 1903 to December 31, 1912.

After the sale of his stock the decedent had no direct financial interest in the corporation, except through the stock of Braunig, which he held as collateral. However, he was consulted in the matter of policy both on account of his experience in the business and interest in the financial success of his nephews. Early in 1924 he was not in accord with Braunig and his nephews as to contemplated expansions of the business. Contrary to his judgment, a branch house was established and it was during this period that the $2,500 note was paid. Shortly after this payment, and after the new business policy had proven to be a success, he surrendered the three unpaid notes to his nephews and explained to them that they as heirs would get what he had on his death; that he always expected to return the notes and was holding them as a means of retaining charge of the affairs of the company if they did not make a success of it. His reason for selling to Braunig was to have a man with more business experience than his nephews in the corporation, and at the time he sold to Braunig, he explained to him his attitude toward his nephews and his desire to have a way to regain his stock if they failed to make a success of the venture.

Section 202 (b) (1) of the Revenue Act of 1921 provides as follows:

(b) The basis for ascertaining the gain derived or loss sustained from the sale or other disposition of property, real, personal, or mixed, acquired before March 1, 1913, shall be the same as that provided by subdivision (a) ; but—

(1) If its fair market price or value as of March 1, 1913, is in excess of such basis, the gain to be included in the gross income shall be the excess of the amount realized therefor over such fair market price or value;

It was alleged in the petition that as of March 1, 1913, there existed "a good will or other intangible value of $7,678." The petitioner offered no evidence to support this contention. The only evidence in the record relating to March 1, 1913, value is the earnings of the company for the years 1908 to 1917 and the book surplus as of December 31, 1912, which was stipulated to be $9,372.42, exclusive of depreciation sustained. The records of the earnings of the company are such that we feel warranted in assuming that the surplus remained approximately the same on March 1, 1913. We are of the opinion that the respondent was correct in his determination that the March 1, 1913, value of the decedent's stock in the Louisiana Paper Company was $26,936.21.

The second error assigned relates to the action of the respondent in treating the sale, which was for cash and notes, as a completed transaction within the taxable year. It is the petitioner's contention that inasmuch as the taxpayer was on the cash receipts and disbursements basis, the notes could not be subject to tax until the year in which they were paid.

The record shows that the decedent, in filing his return for the calendar year 1923, treated the sale as a completed transaction. It also shows conclusively that the makers of the notes were all financially responsible and that the notes with the exception of those which were returned to the makers were paid, together with interest, at their maturity. Accordingly, the respondent was correct in treating the notes as the equivalent of cash, thus resulting in a completed transaction in the year under consideration. *H. J. Kelly*, 3 B. T. A. 257; *W. B. Geary*, 6 B. T. A. 1109.

The petitioner makes the further contention that the decedent made a gift of three notes, aggregating $7,500 to his two nephews, S. L. and C. E. Meyer. The decedent in his return treated the transaction as a sale, not as a gift. There is testimony to the effect that the decedent had expressed an intention of making a gift of the notes to S. L. and C. E. Meyer. In *Estate of David R. Daly*, 3 B. T. A. 1042, we said, " The essential elements of a gift are an intention to give, a transfer of title or delivery and an acceptance by the donee."

We fail to find any evidence to the effect that he made any gift of the three notes in the year 1923. After one note of $2,500 was paid in 1924, he surrendered the remaining three. The gift of the notes was made in 1924 and can in no way affect decedent's tax liability for 1923.

*Decision will be entered for the respondent.*