FREDERICK A. KOCH, JR., EXECUTOR OF THE ESTATE OF FREDERICK A. KOCH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 66302. Promulgated June 13, 1933.

*Alfred L. Geiger, Esq.*, for the petitioner.
*L. S. Pendleton, Esq.*, for the respondent.

OPINION.

SEAWELL: The respondent determined a deficiency in estate tax herein of $4,639.24, of which amount the petitioner in his petition concedes that $4,109.74 is due and payable. The balance of the determined deficiency, $529.50, petitioner contests in this proceeding on the grounds set out in the stipulation of facts filed by the parties.

Frederick A. Koch, a resident of New York, died testate April 26, 1929, possessed of 25 shares of the capital stock of the Builders Holding Corporation (and other property not here involved), which shares were included in the Federal estate tax return of petitioner at the valuation of $100 per share, a total of $2,500. Upon audit of the return the Commissioner valued said shares at $453 per share, a total of $11,325, and determined a deficiency in tax of $529.50 (part of total deficiency of $4,639.24), resulting therefrom. This revalua-

tion of the 25 shares of stock by the Commissioner is the sole error alleged by the petitioner in this proceeding.

The facts were stipulated and are adopted by reference, the salient facts only being herein repeated.

The Builders Holding Corporation, organized under the laws of the State of New York for the purpose of erecting a bank building for use of Flatbush Savings Bank, issued stock of a par value of $100 per share, and adopted bylaws containing section 3 of article 1, reading as follows:

No stockholder shall sell any share of stock of the Company without first offering in writing to sell same to the Company at $100. per share, and waiting 30 days thereafter for the Company to accept the offer and pay for the stock. No stock sold in violation of the by-laws shall be transferred upon the books of the Company or be entitled to dividends thereafter.

The only sale of stock of the Builders Holding Corporation at any time near the date of the death of the decedent (and the only sale at any time mentioned in the stipulations) was that of 22 shares sold June 13, 1929, by the personal representative of one Keeney, deceased, to the Builders Holding Corporation at $100 per share, a total of $2,200. There were no further facts stipulated or evidence offered as to the value of the 25 shares of stock at the time of the death of the decedent, except it was stipulated as follows:

SEVENTH: That the net assets of the Builders Holding Corporation, at the time of the decedent's death, show a book value in excess of Four hundred ($400.) Dollars per share, and it is hereby stipulated that the valuation placed upon the said stock by the Commissioner, namely Eleven thousand three hundred and twenty-five ($11,325.) Dollars, shall, for the purposes of this case, be accepted as the book value of said stock.

Under this stipulation it would seem that the sale of the Keeney stock affords no criterion of the fair market value or the real value of the stock sold. Moreover, we are not advised as to all the circumstances connected with the sale of the Keeney stock, and we hesitate to infer from what does appear that it was an ordinary open market transaction by persons under no compulsion dealing at arm's length. We do not ignore the fact of the Keeney stock sale, but do not consider it sufficient, standing alone, to show the fair market value, or the intrinsic value of the stock in question. We do not understand that petitioner contends that the Keeney stock sale proves his case. But as we do understand it, the petitioner contends, and relies solely upon the contention, that under the applicable statute and regulations the " fair market value " of the shares of stock in question at the time of the death of decedent is the issue here, and that the bylaws of the Builders Holding Corporation quoted above show that " fair market value " to have been not more than $100 per share, at which sum the shares were returned for taxation by

petitioner; and that the presumption favoring the Commissioner's determination has been met and overcome by the stipulated fact.

The statute and regulations, applicable and being those referred to, are as follows:

[Sec. 302, Revenue Act of 1926.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) To the extent of the interest therein of the decedent at the time of his death.

[Regulations 70, art. 13.] *Valuations.*—(1) *General.*—The value of all property includable in the gross estate is the fair market value thereof at the time of decedent's death. The fair market value is the price at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. * * *

\* \* \* \* \* \* \*

Stock in a close corporation should be valued upon the basis of the company's net worth, earning and dividend-paying capacity, and all other factors having a bearing upon the value of the stock. * * *

The petitioner cites as authority sustaining his contention the case of *Wilson* v. *Bowers*, 51 Fed. (2d) 261. In this case the United States District Judge for the Southern District of New York held that shares of corporate stock upon which an option to purchase at a specified sum had been granted in the lifetime of the owner, which option extended beyond testator's death, were taken *cum onere* by the executors of decedent's estate and were limited as to their fair market value by the amount specified in the "binding option." The Circuit Court of Appeals for the Second Circuit affirmed the district court (57 Fed. (2d) 682), saying in part:

\* \* \* So long as the option here involved was outstanding the property could not be sold for more than the option price.

\* \* \* \* \* \* \*

\* \* \* To be taxable at its full value the interest of the testator must also be subject to distribution as part of his estate. These shares were not. Had the testator attempted to bequeath them to a stranger, the option-holders could have taken them away from the legatee upon paying him $20,000 [the option price] within the time limited by the contract.

The shares of stock involved in the proceeding before us were not subject to any option contract. They were subject to distribution as part of the testator's estate. They were bequeathed by the testator to his son, the petitioning executor herein, who is under no obligation to sell or otherwise to dispose of them. See *City Bank Farmers Trust Co., Executor,* 23 B.T.A. 663. Power of unrestricted alienation is a usual concomitant of ownership of property. When such power is separated from the ownership the value of the property, certainly as a trading commodity, is usually lessened; but

not necessarily, of course, destroyed. Power of alienation, or its absence, would not affect the value of property in the hands of one who wished not to sell. The Builders Holding Corporation had no option, or any right, to purchase from the testator the shares of stock in question. As the corporation appears to have been formed for a single purpose, that is, to build a single building, it is not altogether improbable that it was considered advisable that the stock should be held closely and not sold in the relatively short while until the building contract should be finished and the price paid and expenses settled and the corporation dissolved and its assets distributed.

Whatever was the purpose of the bylaw giving the right of refusal to purchase the stock offered for sale in the first instance to the corporation, it is not shown that either the testator or his legatee has desired to sell the stock, or to what extent, if any, the value of the stock has been depressed by the bylaw. Cf. *Estate of Louise N. Schulz*, 14 B.T.A. 419; affd., (C.C.A., 1st Cir., March 29, 1930). We are not advised as to the number of stockholders, or how close their holdings of stock were maintained; but it would seem from the name and purpose of the corporation and the failure to show any activity in the sale of the stock that the stock was probably closely held and not dealt in on the market. The burden is upon the petitioner to show facts which will prove error on the part of the Commissioner. Where stock is closely held and not dealt in on the market, its value for taxation purposes may be shown by resorting to the proof or admissions as to the intrinsic or book value. *Cartier* v. *Commissioner*, 37 Fed. (2d) 894; *Oxford Paper Co.* v. *United States*, 52 Fed. (2d) 1008; *S. L. Meyer, Executor*, 23 B.T.A. 1201.

In a case involving the value of stock paid as compensation to employees of a corporation, it was argued that the stock so received was taxable to recipients only if (1) it had a market value, and (2) if that market value was readily realizable and that if no market existed, or if the fair market value was not readily realizable, no taxable income resulted from its receipt. The court said:

> We think this position can not be sustained. * * * Readily realizable market value may well be considered the best, if not a conclusive, measure of value. If such standard of value exists, it is, under the regulation, to be applied. It is not, however, an exclusive standard, the non-existence of which compels a determination of no value. * * * Evidence of intrinsic value, of market value, or of readily realizable market value, might well constitute such contrary evidence, challenging the presumption. * * * The measure of compensation received in stock is its market value, whether readily realizable or not.

\*     \*     \*     \*     \*     \*     \*

We do not understand that market value is to be determined only by proof of actual sales. It may exist independent of such sales * * * intrinsic value may be resorted to for the purpose of establishing market value where from proven facts and circumstances there could be no doubt of the existence of a market if the same were offered for sale. *Crowell* v. *Commissioner*, 62 Fed. (2d) 51.

Upon authority of the courts and upon reason we can not agree that the value of corporate stocks for estate tax purposes, in the absence of actual sales of the stock, can be limited by the fiat of a corporation's bylaws to a sum less than the intrinsic value of the stock. It having been stipulated that the Commissioner's determination of the value of the stock is the book value thereof, we hold that the existence of the bylaw of the corporation referred to is not sufficient to overcome the presumption of the correctness of the Commissioner's determination, and we approve that determination.

*Judgment will be entered for the respondent.*